# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V. | NO. 4:15-CV-165-DMB-JMV |
| BOLIVAR COUNTY | DEFENDANT |

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions filed by Bolivar County: (1) "Defendant's Motion for Declaratory Judgment," Doc. #11; and (2) "Defendant's Motion to Deposit Funds," Doc. #16.

## I
## Background and Procedural History

On November 17, 2015, the United States of America filed a complaint in this Court against Bolivar County, seeking declaratory, equitable, and monetary relief. Doc. #1. The complaint asserted a claim under Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111–12117, for alleged discrimination by the Bolivar County Regional Correctional Facility ("BCRCF") against Tommey Gomillia, an applicant for a correctional officer position. *Id.* On March 17, 2016, this Court entered a consent decree ("Consent Decree"), agreed to by the parties, terminating this action. Doc. #10.

Of relevance here, the Consent Decree: (1) prohibits Bolivar County from engaging in any act or practice of employment discrimination in violation of Title I of the ADA; (2) directs Bolivar County to provide training on Title I of the ADA; and (3) requires Bolivar County to file biannual reports on its efforts to comply with the Consent Decree. *Id.* at 3–4. Additionally, paragraph 12 of the Consent Decree provides:

12. Bolivar County shall offer to Mr. Gomillia:

> a. Within one (1) year of the effective date of this Consent Decree, the first available position of Correctional Officer at BCRCF, with a remedial seniority date of September 6, 2011, subject to passing all physical and/or other applicable preemployment requirements. Bolivar County shall apply the remedial seniority date of September 6, 2011 to salary increases (such that Mr. Gomillia will be instated at the salary he would have been entitled to had he been employed since the remedial seniority date), all non-competitive job benefits that are based on time served in the position, and competitive seniority status for all purposes.
>
> b. Adjustment of Mr. Gomillia's retirement date, with all associated rights and benefits, to reflect no lost time between September 2011 and the date of his reinstatement under paragraph 12(a).
>
> c. Within thirty (30) days of the effective date of this Consent Decree, a total monetary award of $99,999.99, which includes:
>
>> i. A monetary award in the gross amount of $47,072.00, which will be designated as back pay. This monetary amount shall be subject to any applicable federal, state, and local taxes, in addition to other payroll tax withholding deductions, and Bolivar County shall issue an IRS Form W-2 to Mr. Gomillia for this amount.
>>
>> ii. A monetary award of $3,363.95, which will be designated as accumulated interest on the back pay. This amount shall not be subject to withholding deductions, and Bolivar County shall issue an IRS Form 1099-INT to Mr. Gomillia for this amount.
>>
>> iii. A monetary award of $49,564.04, which will be designated as compensatory damages. This amount shall not be subject to withholding deductions, and Bolivar County shall issue an IRS Form 1099 to Mr. Gomillia for this amount.

*Id*. at 5–6.

On May 4, 2016, Bolivar County filed the instant motion for declaratory judgment. In its motion, Bolivar County seeks "declaratory relief adjudicating, construing and interpreting whether the phrase a 'total monetary award of $99,999.99' in Section IV <u>Individual Relief</u> Section 12 (a)-(c) of the Consent Decree (Doc. 10) entered by the Court on March 17, 2016, requires Bolivar County to pay $8,371.14, above the agreed upon amount," relative to "the dispute concerning the payment of $8,371.14 to the Public Employees Retirement System on behalf of Tommey Gomillia." Doc. #11 at 1. More precisely, Bolivar County, in its accompanying memorandum brief, requests an

interpretation by the Court which would result in an order "(a) declaring that Bolivar County owes 'a total monetary award of $99,999.99' to Tommey Gomillia under the Consent Decree; [and] (b) that Bolivar County is not obligated to pay the $8,371.14 to PERS on behalf of Tommey Gomillia." Doc. #12 at 7.

The United States responded in opposition on May 20, 2016. Doc. #13. In its response, the United States asks the Court for an interpretation of the Consent Decree that would result in the Court "order[ing] Bolivar County to pay the monetary award to Mr. Gomillia [required under the Consent Decree] without deducting the $8,371.14 the County is required to pay to PERS." Doc. #14 at 9. Bolivar County replied on May 27, 2016, essentially reiterating its position that it is "not legally responsible for the additionally [sic] payment of $8,371.14." Doc. #15 at 10.

On December 22, 2016, the County filed "Defendant's Motion to Deposit Funds," seeking to deposit $88,645.74 in the registry of the Court. Doc. #16. In a status conference with the parties on December 27, 2016, the United States represented that it does not oppose the County's motion to deposit funds, with the caveat that the deposit of funds is without prejudice to the United States' position that the County owes an additional $8,371.14 to PERS. The United States also represented that, with the same caveat, it has no objection to accepting tender of the County's $88,645.74.

## II
## Jurisdiction to Grant Requested Relief

As grounds for its motion for declaratory judgment, Bolivar County cites only the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.[1] Doc. #12 at 1. The Court must, as an initial matter, determine whether the motion is procedurally proper.

---

[1] The County references Uniform Local Rule 7(b)(4) and Federal Rule of Civil Procedure 57. However, Rule 57 merely states that "[t]hese rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." Local Rule 7(b) relates to motion practice generally within this District.

### A. Declaratory Judgment Act

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Under the Act, "a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment." *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010) (internal quotation marks omitted) (quoting *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009)).[2] Accordingly, "[a] request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment … [not] if raised only in passing, or by motion." *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014).[3] Therefore, the County's motion must be denied to the extent it seeks declaratory relief.

### B. Alternative Grounds

While this Court may not enter a declaratory judgment based on Bolivar County's motion, by entering a consent decree with prospective effect, a district court retains inherent jurisdiction to "interpret and modify" the decree. *Williams v. Edwards*, 87 F.3d 126, 131 (5th Cir. 1996) (quoting *Alberti v. Klevenhagen*, 46 F.3d 1347, 1365 (5th Cir. 1995)). However, where a consent decree "cannot reasonably be read to have any prospective effect," the district court entering the decree "ha[s] no jurisdiction to clarify or modify" it in the same action, unless justified by the grounds in

---

[2] *Accord, Enniss Family Realty I, LLC v. Schneider Nat. Carriers, Inc.*, 916 F. Supp. 2d 702, 711 (S.D. Miss. 2013); *Roberts v. Am. Bank & Tr. Co.*, 835 F. Supp. 2d 183, 209 n.4 (E.D. La. 2011); *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995).

[3] A motion for declaratory judgment in an action for declaratory judgment may be construed as a motion for summary judgment. *Kam-Ko Bio-Pharm*, 560 F.3d at 943. A consent decree, however, is a final judgment. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 391 (1992); *see Ho v. Martin Marietta Corp.*, 845 F.2d 545, 547 (5th Cir. 1988) ("[J]udicial consent decrees are … final judgments on the merits."). Summary judgment after the entry of a final judgment is procedurally improper. *Int'l Millennium Consultants, Inc. v. Taycom Bus. Sols.*, 463 F. App'x 506, 511 (6th Cir. 2012) ("Summary judgment is a pretrial—and, thus, prejudgment—motion."). Bolivar County's motion, therefore, cannot be construed as a motion for summary judgment.

Rule 60(b) of the Federal Rules of Civil Procedure relevant to non-prospective judgments.[4] *Cook v. Birmingham News*, 618 F.2d 1149, 1153 & n.5 (5th Cir. 1980).

"A judgment operates prospectively if it requires a court to supervise changing conduct or conditions that are provisional or tentative." *In re Moody*, 849 F.2d 902, 906 (5th Cir. 1988). "The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative." *Cook*, 618 F.2d at 1152 (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)). With respect to a consent decree comprising an injunction, one indication that the decree lacks the requisite prospective effect is that in the decree, the court does not "state that it reserved power to modify the decree or that it retained jurisdiction over the case." *Id.* at 1152–53.

Here, in issuing the Consent Decree, the Court expressly retained jurisdiction to "enter[] any orders that may be necessary to implement the relief provided in the Decree." Doc. #10 at ¶ 29. Moreover, in this case, the Consent Decree specifies various continuing duties of Bolivar County under the section entitled "Injunctive Relief," at least two of which are of prospective effect— training of new supervisors and semiannual reporting. *Compare id.* at ¶¶ 10–11 *with Cook*, 618 F.2d at 1152 ("The decree expressly states … that the court 'declines plaintiffs' prayer for injunctive relief.'").

Regarding the particular provision of the Consent Decree implicated by Bolivar County's motion, the motion seeks to clarify Bolivar County's responsibility for a particular disputed sum. Doc. #12 at 1. The United States argues that Bolivar County's responsibility to pay that sum arises from paragraphs 12.a. and 12.b of the Consent Decree. Doc. #14 at 5–6. Paragraph 12.b requires the

---

[4] Such grounds include fraud, mistake, or newly discovered evidence—that is, any ground in Rule 60(b) but subsection (5). *Cook v. Birmingham News*, 618 F.2d 1149, 1153 (5th Cir. 1980).

"[a]djustment of Mr. Gomillia's retirement date, with all associated rights and benefits, to reflect no lost time between September 2011 and the date of his reinstatement under Paragraph 12(a)." Doc. #10 at ¶ 12.b. The conditions in paragraph 12.b of the Consent Decree, which are dependent on Gomillia's acceptance of the relevant job offer, are "provisional or tentative" because the lack of definitive language regarding both Gomillia's reinstatement and the "rights and benefits" associated with an adjusted retirement date subject the conditions to judicial supervision.[5] Accordingly, both the Consent Decree as a whole—and the particular provision of the Consent Decree implicated by Bolivar County's motion—are of the requisite prospective effect to provide this Court with jurisdiction to interpret the decree.

## III
## Interpretation of the Consent Decree

Bolivar County seeks an interpretation of the Consent Decree that would ultimately lead to two declarations by the Court: (1) that the County owes a "total monetary award of $99,999.99 to Tommey Gomillia" and (2) that the County is "not obligated" to pay $8,371.14 in employer contributions to PERS on Gomillia's behalf.

### A. Applicable Law

To interpret a consent decree, "the general principles of contract interpretation apply, among which is the rule that 'the scope of a consent decree must be discerned within its four corners,'" with the plain meaning of language in a consent decree given effect. *Lelsz v. Kavanagh*, 824 F.2d 372, 373 (5th Cir. 1987) (quoting *Eaton v. Courtaulds of N. Am., Inc.*, 578 F.2d 87, 91 (5th Cir. 1978)); *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 350 (5th Cir. 1998).

---

[5] For example, if Gomillia refuses reinstatement and never accrues interest in a retirement date in PERS, "notwithstanding the parties silence or inertia, the district court is not doomed to some Sisyphean fate, bound forever to enforce and interpret a preexisting decree without ever occasionally pausing to question whether changing circumstances have rendered the decree unnecessary, outmoded, or even harmful to the public interest." *Alberti*, 46 F.3d at 1365 (quoting *In re Pearson*, 990 F.2d 653, 658 (1st Cir. 1993)). The present record suggests that, as of the filing of Bolivar County's motion, Gomillia had *not* accepted reinstatement. The question of Bolivar County's responsibility for the disputed employer contributions should Gomillia refuse to consider reinstatement is not before the Court.

## B. Analysis

The County's first requested declaration essentially recites the language in paragraph 12.c of the Consent Decree. *Compare* Doc. #10 at ¶ 12.c. *with* Doc. #12 at 7. The Court will deny this request because the requested declaration, which merely repeats the substance of the text in paragraph 12.c, would provide no clarification.

As for the second requested declaration, the County argues that paragraph 12.c, which sets forth the "total monetary award" of the consent decree, does not include a payment to PERS and, therefore, precludes such a payment. Doc. #12 at 3–4. However, paragraph 12.c unambiguously concerns an award to be paid *to* Gomillia. As such, it does not determine whether the County must pay PERS the disputed employer contributions, which are neither "credited to individual member accounts" nor "payable to members through refunds." PERS of Miss., Member Handbook 13 (2016), *http://www.pers.ms.gov/content/handbooks/member_handbook.pdf*.[6]

Rather, as the United States correctly argues in its response, Gomillia's entitlement to retirement benefits is governed by paragraphs 12.a and 12.b, which together require that: (1) upon reinstatement, Gomillia be provided a remedial seniority date of September 6, 2011, and that such date be applied to Gomillia's "non-competitive job benefits;" and (2) Gomillia's "retirement date, with all associated rights and benefits, [shall] reflect no time lost between September 2011 and the date of his reinstatement …." Doc. #14 at 5–6. Put differently, paragraphs 12.a and 12.b unambiguously require that, upon reinstatement, Gomillia's retirement benefits reflect no time lost from September 2011 until the date of reinstatement.

There is no dispute that the PERS employer contributions represent a form of retirement

---

[6] The Court takes judicial notice that PERS states employer contributions are neither credited to a member's accounts nor payable to the member in refunds. *See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of document published in official agency reporter and available on "agency's website and on Lexis and Westlaw"); *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 354 n.5 (5th Cir. 2011) (citing *Kitty Hawk*, 418 F.3d at 457) ("[T]his court has, in the past, taken judicial notice of information posted on a government website ….").

benefit or that the failure to pay required employer contributions would reflect "time lost" of such benefits. Moreover, the County does not respond to the United States' argument that the language in paragraphs 12.a and 12.b of the Consent Decree "unambiguously require[s] Bolivar County to pay the employer cost of retirement benefits." Accordingly, the Court concludes that the Consent Decree unambiguously requires Bolivar County to pay the disputed PERS employer contributions. Having reached this conclusion, the Court declines to consider Bolivar County's argument, raised in its reply brief, that the parties' negotiations did not contemplate PERS employer contributions.[7] *See Funeral Fin. Sys. v. United States*, 234 F.3d 1015, 1018 (7th Cir. 2000) ("[E]xcept for the highly unusual instance where literal application of a text would lead to absurd results or thwart the obvious intentions of its drafters, if a contract is found to be unambiguous, then we are not to examine any extrinsic evidence.") (internal quotation marks and citation omitted). Therefore, because the Consent Decree's clear language requires that Bolivar County pay the PERS employer contributions, the County's request for an interpretation declaring the contrary must be denied.

## IV
## Conclusion

In its motion, Bolivar County asks the Court to interpret paragraph 12 of the Consent Decree with respect to the issue of whether Bolivar County is responsible for the payment of $8,371.14 to the Public Employees Retirement System on behalf of Tommey Gomillia. For the reasons above, the Court, although deciding to interpret the Consent Decree, declines to interpret the Consent Decree in the manner urged by Bolivar County. Thus, Bolivar County's motion [11] is **GRANTED in Part**

---

[7] Also in its reply, Bolivar County claims that the United States "concedes" that "the provisions of the Consent Decree are ambiguous" in quoting the above language from the PERS Member Handbook in its opposition. Doc. #15 at 9–10. To the contrary, the United States maintains in its opposition that the Consent Decree is unambiguous, quoting the Member Handbook only to clarify the nature of disputed employer contributions—not the meaning of the Consent Decree's relevant language. Doc. #14 at 1, 3, 7. Regardless, arguments may not be raised for the first time in a reply brief. *See Jones v. Cain*, 600 F.3d 527, 540 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."); *Campbell v. City of Indianola*, 117 F. Supp. 3d 854, 863 n.13 (N.D. Miss. 2015) ("Th[e] argument, which was not raised in [Defendants'] motion for summary judgment or Defendants' initial brief, is deemed waived.").

and **DENIED in Part**. The motion is GRANTED only to the extent it seeks clarification of this Court's consent decree but is DENIED to the extent it seeks the specific declarations regarding the Consent Decree requested by Bolivar County. Accordingly, Bolivar County's motion to deposit funds [16] is **DENIED** as moot.[8]

**SO ORDERED**, this 28th day of December, 2016.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[8] As mentioned above, the United States represented to the Court that it has no objection to accepting tender of the County's $88,645.74, provided that the County also pays the $8,371.14 in PERS contributions. As this order establishes the County's obligation to pay the $8,371.14, there remains no obstacle to the United States' acceptance of the $88,645.74 by year end. Further, because the County represented during the status conference that it is prepared to promptly pay the $88,645.74 and, if ordered by the Court, also the $8,371.14, there is no need for any funds to be deposited into the registry of the Court. The United States' pending motion for post-judgment interest will be addressed by separate order after full briefing.